In the matter of the estate of AUGUST F. ECKERT.

[Decided April 20th, 1922.]

1. Where an executor delayed over four years in filing his inventory and final account, he is liable for depreciation in the value of bonds, notwithstanding the act (*2 Comp. Stat. p. 2271 § 34*), this statute not applying to cases of negligent delay in settlement.

2. Where an executor withdrew cash of an estate from a bank in which it earned four per cent. interest, and deposited it in his own bank at two per cent. interest, he is liable for the interest it would have earned if it had been left in the first bank.

3. Where there was no testimony before the orphans court to warrant a higher estimate than $150 for the value of furniture belonging to an estate, overruling an exception to the executor's final account putting its value at $800 was proper.

On appeal from an order of the orphans court of Essex county overruling exceptions to the executor's account.

*Messrs. Riker & Riker,* for the appellants.

*Mr. Edward R. McGlynn,* for the respondent-executor.

BACKES, VICE-ORDINARY.

Annetta E. Maxwell, a daughter and one of the legatees under the last will and testament of August F. Eckert, deceased, filed thirty-two exceptions to the final account of the executor of the will, of which fifteen were overruled. This appeal is from so much of the order overruling exceptions 1, 3, 4, 11, 17 and 18.

The testator died in October, 1914. The executor filed his inventory September 4th, 1918, and his final account March 27th, 1919. Between the time of filing the inventory and filing the account certain traction company bonds which came to the hands of the executor as part of the estate depreciated in value and for this depreciation, amounting to $553.78, $1,100 and $360 respectively, the executor prayed allowances which were granted by the orphans court over exceptions. I am of the

opinion that the exceptions should have been sustained, for the reason that as the executor was grossly delinquent in settling the estate, and as the losses occurred during the period of his delinquency, they should fall upon him, not upon the estate.

The testator was survived by a widow and two adult daughters. He left a simple will, in which he gave a house to his two daughters, or, in lieu, $1,500 to each in case he did not own it at the time of his death; a piano to one of the daughters; and the rest of his estate to his widow and two children in equal shares. His personal estate of $26,000 consisted of cash in bank, mortgages, traction company bonds, and the stock in trade of a small paint business appraised at less than $400. There was some real estate as to which the executor had no official concern, although he took it in charge, by arrangement with the family, and has accounted for the rents, and the sales prices of two pieces. The orphans court made the allowance for the depreciation (exceptions 1, 3 and 4) on the theory that as the securities had been the investments of the testator and as the executor continued the investments in the exercise of a reasonable discretion and in good faith, he was protected by the statute (*Comp. Stat. p. 2271*), which reads:

"　·　*　*　Whenever any testator shall have made, in his lifetime, any investment of money in municipal bonds or on bond secured by mortgage, or in the bonds or stock shares of any corporation, and the same bonds, mortgages or stock shares shall come or shall have come into the hands of the executor of, or trustee under, the will of such testator or of the administrator with the will annexed, to be administered. and such executor, administrator or trustee may, in the exercise of good faith and reasonable discretion, have continued such investment, or may hereafter continue the same, he shall not be accountable for any loss by reason of such continuance."

Rather, the court put its decision on the ground that, as it was not shown that the executor failed to exercise reasonable discretion, and as there was no evidence of the absence of good faith, the statute protected him. It would seem to me that in the absence of this statute the executor would be liable and that the burden is upon him to show that he exercised reasonable discretion and acted in good faith to avail himself of its protection. But that may remain a moot question. The statute invoked is

intended to protect executors lawfully and diligently discharging the duties of their office. The *Brown Case* (*72 N. J. Eq. 667*), cited by counsel, is an illustration, as where, under the terms of a will, the estate is to be held beyond the statutory period for distribution. And it also applies where there are valid reasons for not promptly accounting, as, for instance, where the estate is in! litigation and as a result distribution cannot be made. But the statute does not and was never intended to protect a derelict executor where a loss is suffered during the period of his delinquency. Had the executor discharged his duty according to law, the loss to the estate could not have occurred.

The Orphans Court act requires an executor to "state and settle his account within one year after his appointment unless the court, for good cause shown, allows further time;" and if he fails he may be cited by any person in interest, and if he neglects for two years, it becomes the duty of the surrogate to cite him, and failure, after citation, is cause for removal. Here the executor was in default nearly four years, and then filed his account only under pressure of citation. He gave various excuses for the delay which seem to have found favor with the court below. He says, for one thing, that he was held up by the closing out of the paint business. It is all nonsense to say that it took him four years and more to wind up a little three or four hundred dollar affair, to sell a few old brushes and ladders, and to collect a few dollars of accounts, and it is perfectly absurd as an excuse for delaying the settlement of a $25,000 estate. Another reason is that he was delayed by the sale of the real estate. That is not true, for it appears by the account that the real estate was sold in 1915 and 1916. His other excuse for not accounting earlier is that he was trying to make a settlement with the exceptant. This is pitiably weak and unworthy. Early in 1917 she urged him to account and settle with her, and she persisted without success until she obtained the compulsory process of the court. He negotiated with her, and they could not come to an agreement as to her share, but his negotiations were always under pressure of her demand for an official accounting. His failure to come to a settlement, obviously, does not relieve him of the charge of neglect. If he chose to bargain with her

instead of following the plain line of statutory duty, he must suffer the consequence. It was not his privilege as executor to negotiate settlements with the beneficiaries. The performance of his trust·called him to account in the orphans court and to make distribution, as the testator directed, under the watchful eye and all-round protection of the court, and that, in this case, was simple and easy of compliance. In the discharge of these duties, he was inexcusably and grossly negligent. No case has come under my notice recently where an executor (one who has not gained by his neglect, and this one has not) has abused his trust as this one has. The exceptant was entitled to the gifts from her deceased parent six years ago, and, withholding them until now, is not only a legal but a moral wrong. It is just that, when an executor has neglected his duty, and during the period of neglect there is a depreciation in the securities of the estate, the loss should fall upon him. Here the executor has no reason for complaint or any one to blame but himself, for, had he turned over the estate within the time fixed by law, or reasonable lee-way (and it was his right to distribute in kind), he would not have found himself in his present predicament, and the estate would have been saved the loss he now seeks to impose upon it.

There is another good reason for disapproving the allowances. The court below determined the amounts by the fluctuating stock market quotations. These, as we all know, are up one day and down the next. At the present time, as I am informed by counsel, the bonds have recovered and the present stock market quotations are nearly equal to the inventory appraisal.

The orphans court refused to charge the executor with interest that he should have secured by investment of cash on hand (exception 11). The cash amounted to upwards of three thousand dollars. The deceased had it on deposit in a savings bank where it drew interest at the rate of four per cent. In 1917 or 1918, the executor withdrew the money from the savings bank and put it in his own bank. By that I mean a bank of which he was the president, where it drew but two per cent. His motive for doing this cannot be characterized otherwise than as gross misconduct. Being in default in the settlement of his account, he ought to be charged with legal interest, but, unquestionably, he is liable at

the rate the sum would have earned had he left the deposit with the savings institution.

Exceptions 17 and 18 were properly overruled. The first was as to the value of the household furniture. The exception alleges it was worth $900. The orphans court found it to be worth $150. There was no testimony before the court to warrant any higher figure. By the second the executor was sought to be charged with the value of a diamond ring alleged to be worth $200. The testimony shows it to be worth about $30. It never came to the notice of the executor nor could it have with reasonable diligence.

The order of the orphans court sustaining exceptions 1, 3, 4 and 11 will be overruled. In overruling exceptions 17 and 18 it will be affirmed. There was a counter-appeal taken by the executor which was abandoned at the hearing. As to this there will be an affirmance.

I regret that the allowance made to counsel for the executor, which was charged to the estate, is not before me for review. They were incurred in defending the misconduct of the executor and it seems unfair that they should be paid by the beneficiaries.